UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Margaret Jones

    v.                                                    Civil No. 10-cv-152-JL
                                                      Opinion No. 2011 DNH 209
Tommie C. McKenzie *et al.*


**O R D E R**

    This case involves the level of care that police owe to detainees to prevent them from committing suicide while in protective custody. Margaret Jones, acting as the administratrix of the estate of her brother, Robert Vieara, has sued the Town of Conway, as well as two of its police officers, and two of its police dispatchers (the "dispatchers" and, together with the police officers, the "individual defendants"), on claims of constitutional violations under 42 U.S.C. § 1983 and negligence under state law arising out of Vieara's death. Vieara took his own life while in the protective custody of the Conway Police. Jones alleges that the individual defendants ignored Vieara's risk of suicide and that the Town failed to train them properly to identify and care for potentially suicidal detainees.

    The defendants move for summary judgment on a number of grounds, most notably, the absence of any evidence that the

individual defendants were deliberately indifferent to the risk of Vieara's suicide, which Jones must show to prevail on her § 1983 claim.  This court has jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental jurisdiction).

After hearing oral argument, the court grants the defendants' motion for summary judgment on the § 1983 claim and declines to exercise supplemental jurisdiction over the state-law claims.  As explained fully <u>infra</u>, no rational finder of fact could conclude that the individual defendants acted with deliberate indifference to Vieara's risk of suicide.  He did not present an unusually strong risk of suicide and, in any event, the individual defendants were not willfully blind to the risk he presented.  While this ruling also resolves the § 1983 claim against the Town, that claim also fails for the independent reason that there is no evidence of the requisite casual connection between the Town's alleged failure to train the individual defendants and Vieara's suicide.

**I. Applicable legal standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c)(2). An issue is "genuine" if it could reasonably be resolved in either party's favor at trial, and "material" if it could sway the outcome under applicable law. See, e.g., Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citation omitted). In determining whether summary judgment is appropriate, the court must "view[ ] all facts and draw[ ] all reasonable inferences in the light most favorable to the nonmoving party." Id. The following facts are set forth accordingly, though the court has made an effort to note the defendants' version of events where appropriate.

## II. Background

On a day in August 2009, Edward Vieara boarded a bus at South Station in Boston to visit his sister, Margaret Jones, with whom he planned to stay for approximately one week to help her paint her house. Jones originally planned to meet Vieara at the bus station in Berlin, New Hampshire, at about 9:30 p.m. that night, but later called him and left him a message to meet her at the Gorham, New Hampshire stop. Jones waited at the Gorham station, but, as it turned out, the bus did not stop there.

Jones then drove to the Berlin station, the final stop on the route, meeting the bus at approximately 10:00 p.m. But Vieara was not on the bus. When Jones inquired of the driver, he

told her that he had removed a passenger at the stop in Conway, New Hampshire, because that passenger had been drinking. Jones then drove to her house in Dummer, New Hampshire, about twelve miles from the Berlin stop and approximately an hour's drive from Conway. When she arrived, a message on her answering machine from defendant George Walker, a sergeant with the Conway Police Department, told her that Vieara was at the police station. In the message, Sgt. Walker asked Jones to call the station.

Sgt. Walker had responded to a call from the bus driver about Vieara, which had been placed at approximately 9:00 p.m. When Sgt. Walker met the bus at the Conway stop, he observed that Vieara was very intoxicated, and took him into protective custody. See N.H. Rev. Stat. Ann. § 172-B:3, I ("[w]hen a peace officer encounters a person who, in the judgment of the officer, is intoxicated . . . , the officer may take such person into protective custody").

After taking Vieara to the Conway Police Station, Sgt. Walker completed a "suicide evaluation form," which classifies a detainee as having a "low," "medium," "high," or "very high" risk of suicide depending on an officer's observations, including a detainee's answers to certain questions. Sgt. Walker noted on the form that Vieara was "tired," had "no spouse," had "prior arrests," was "intoxicated," and had "used alcohol" that day.

These factors combined to put Vieara in the "low risk" category for suicide. Sgt. Walker should have also noted, however, that Vieara was in "protective custody" and that he was "crying."[1] If Sgt. Walker had noted these two additional factors, Vieara would have been placed in the "medium risk" category.[2]

Sgt. Walker informed Vieara that he could call someone for a ride or could stay the night to sober up and be released in the morning. Vieara asked and was permitted to call Jones but was unable to reach her. Sgt. Walker then placed Vieara in a holding cell, which was equipped with a video camera without an audio feed. The camera was being monitored by a dispatcher, defendant Roberta Roth. After placing Vieara in the cell, Sgt. Walker called Jones and left the message on her home answering machine.

---

[1] The defendants admit that Vieara was crying at some point after being taken into protective custody, but it is unclear whether he began crying only after Sgt. Walker had completed the suicide evaluation form. Though not necessarily warranted on this record, in light of the summary judgment standard, the court will assume that Sgt. Walker should have recorded that Vieara was crying at the time Sgt. Walker filled out the suicide evaluation form.

[2] In her opposition to the defendants' motions, Jones argues that Sgt. Walker should have also noted that Vieara was unemployed, confused, and irritable. Jones does not point to any evidence in the record to support that assertion. Regardless, even accepting it as true has no effect on the outcome of the motions, as explained infra, because adding those factors would not have placed Vieara higher than the "medium risk" category anyway.

Jones returned Sgt. Walker's call at approximately 10:58 p.m. Jones recalls that Sgt. Walker told her that Vieara "had been put into protective custody" and that "the police had decided that [he] could not be released until the next morning . . . . [T]hey were going to let [him] go, but they decided to keep him over night." Sgt. Walker left the station when his shift ended at 11:00 p.m. and he was relieved by another sergeant, defendant Tommie McKenzie.

Near the beginning of his shift, Sgt. McKenzie performed a routine station check, which included personally checking on Vieara in his holding cell. Sgt. McKenzie observed Vieara lying on his cot and "voicing his displeasure at being there," which Sgt. McKenzie did not consider to be unusual for a detainee. Sgt. McKenzie did not speak with Vieara. After his station check, Sgt. McKenzie left the station to go out on patrol, leaving Roth alone in the building with Vieara. Roth's duties were to monitor the holding cells via the closed circuit cameras, to answer the phones, and to dispatch police, fire, or ambulance personnel as needed. During her periodic monitoring, Roth did not notice Vieara doing much besides sitting or lying down. The last time Roth checked the camera prior to 11:30 p.m., Vieara was lying in his cot.

At approximately 11:30 p.m., Roth received a phone call from a woman who wanted to speak to Sgt. McKenzie about an earlier incident she had reported. Roth spoke with her for a few minutes. During this time, Roth was turned away from the camera.

It was during this time that Vieara took his own life. The video of the holding cell shows Vieara rising from his cot at 11:30:08; removing his shirt and making a "thumbs up" gesture to the camera at 11:30:50; then removing his underwear, climbing on his cot, and hanging himself by hooking the waistband of his underwear onto a screw protruding between 1/8 and 1/4 inch from the surface above the door. (The screw had formerly secured a Plexiglas cover for the cell's prior video equipment.) It took two minutes and thirty-one seconds for Vieara to make the preparations for hanging himself. At approximately 11:38 p.m., eight minutes after he rose from his cot, Vieara made his last movement.

At approximately 11:48 p.m., defendant James Mykland, another police dispatcher, arrived to relieve Roth at the end of her shift. At that point, they checked on Vieara via the closed circuit camera and observed that he appeared to be standing by the cell door. Neither went to the cell at that time.

At approximately 12:15 a.m., Sgt. McKenzie returned to the station to retrieve the message that Roth had recorded. He

7

noticed that Vieara appeared to be standing by the cell door and decided to check on him.  Upon arriving, Sgt. McKenzie realized that Vieara had hanged himself.  Sgt. McKenzie entered the cell, checked for a pulse, and called an ambulance.  He began CPR and tried to revive Vieara.  The medical examiner who responded declared Vieara dead at the scene.

Jones subsequently commenced this action in Coos County Superior Court, naming as defendants Sgt. Walker, Sgt. McKenzie, the dispatchers, and the Town.  The defendants, invoking federal question jurisdiction, removed the case to this court.  See 28 U.S.C. § 1441.

## III.  Analysis

Jones brings a number of claims on behalf of Vieara's estate:  (1) against all defendants, a claim under § 1983 for violating Vieara's substantive due process rights; (2) against the individual defendants, state-law negligence claims; and (3) against the Town, theories of municipal liability, respondeat superior, and negligent training and supervision of the officers and dispatchers.  In moving for summary judgment on the § 1983 claim, the defendants argue that no reasonable fact finder could conclude that the individual defendants acted with deliberate indifference toward Vieara's risk of suicide.  The court agrees.

The court also agrees with the defendants that the § 1983 claim against the Town fails for the independent reason that there is no evidence to suggest a causal connection between its alleged failure to train the officers and Vieara's suicide.

**A. The § 1983 claims**

**1. Individual defendants**

An officer violates the due process rights of a pretrial detainee under the Fourteenth Amendment[3] if the officer is deliberately indifferent "to the unusually strong risk that a detainee will commit suicide." Bowen v. City of Manchester, 966 F.2d 13, 16 (1st Cir. 1992). This standard demands more than negligence. Id. at 17.

Rather, a plaintiff must show: (1) an unusually serious risk of self-inflicted harm, (2) the defendant's actual knowledge of, or at least willful blindness to, that elevated risk, and (3) the defendant's failure to take obvious steps to address that known, serious risk. Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992). "The risk, the knowledge, and the failure to do the obvious, taken together, must show that the defendant is 'deliberately indifferent' to the harm that

---

[3] See U.S. Const. amend. XIV ("nor shall any State deprive any person of life, liberty, or property, without due process of law ").

9

follows." Id. (citations omitted).  As discussed infra, no rational trier of fact could find either that Vieara exhibited an unusually serious risk of self-inflicted harm, or that the individual defendants were willfully blind to the risk he did exhibit.

### a. Strong risk of suicide

Deliberate indifference requires a risk of self-inflicted harm that is "large and strong." Elliott v. Cheshire Cnty., N.H., 940 F.2d 7, 11 (1st Cir. 1991) (internal quotation marks and citations omitted).  Thus, a plaintiff must demonstrate that "[t]he strong likelihood of suicide [was] so obvious that a lay person would easily recognize the necessity for preventative action." Stewart v. Robinson, 115 F. Supp. 2d 188, 193 (D.N.H. 2000) (internal quotation marks and citations omitted).  In other words, "the risk of self-inflicted injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." Id. (internal quotation marks and citations omitted).

Jones argues that a rational factfinder could conclude that Vieara presented an unusually high risk of suicide. Specifically, she contends that Vieara was unemployed, confused, crying, and irritable when he was taken into protective custody

(even though Sgt. Walker failed to note those facts on the evaluation form) and that, as a result, Vieara should have been classified as a "medium risk" for suicide.  But, even putting aside the lack of record support for much of the alleged behavior that Sgt. Walker failed to record, see note 2, supra, a "medium risk" of suicide, by definition, does not equate with the "unusually strong risk" necessary to sustain Jones's substantive due process claim.  More importantly, there is no evidence that Vieara revealed any intention of harming himself to Sgt. Walker, let alone to any of the other individual defendants.  Nor is there any indication that the behavior they observed after placing Vieara in the cell (such as crying and "voic[ing] displeasure") was suggestive of such an intention, or, for that matter, unusual for someone taken into protective custody for intoxication.

    Indeed, courts have ruled that such behavior is not nearly enough to suggest an unusually high risk of suicide for purposes of a substantive due process claim.  See, e.g., Perez v. Town of Cicero, No. 06-4981, 2011 WL 3626034, at *3 (N.D. Ill. Sept. 30, 2011) (and cases cited therein) ("That [the decedent] behaved strangely in front of [the officer]--saying odd things, not making sense, using curse words, speaking to himself, and not acting like a person in control of himself--did not imbue [the

11

officer] with the subjective knowledge that [the decedent] was a suicide risk."). Because no rational trier of fact could conclude that Vieara presented an unusually high risk of suicide, the individual defendants are entitled to summary judgment on the § 1983 claim against them.

### b.  Willful blindness

Even if Vieara's behavior did present a high risk of suicide, however, no rational trier of fact could conclude that the individual defendants were willfully blind to it.[4] A showing of willful blindness requires "'a level of culpability higher than a negligent failure to protect from self-inflicted harm.'" Bowen, 966 F.2d at 17 (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1024 (3d Cir. 1991)). Thus, "it is not enough for plaintiff to prove that [the defendants] reasonably should have known of [the] risk" of suicide. Wallis v. City of Worcester, No. 03-11318, 2007 WL 690050, at *4 (D. Mass. Mar. 1, 2007).

It is undisputed that Sgt. Walker filled out a suicide evaluation form for Vieara and that Sgt. McKenzie checked on him

---

[4]As just discussed, to satisfy the second element of the "deliberate indifference" standard here, the individual defendants must have possessed actual knowledge of, or shown willful blindness to, Vieara's elevated suicide risk. Manarite, 957 F.2d at 956. Jones does not argue that the individual defendants had actual knowledge of Vieara's allegedly high risk of suicide and, for the reasons just set forth, there is no evidence to support such a theory.

12

in his cell before going out on patrol.  It is likewise undisputed that, after Sgt. McKenzie left, Roth periodically checked on Vieara via the video monitor.  Jones argues, understandably, that the individual defendants should have done more:  (1) Sgt. Walker should have filled out the form correctly; (2) Sgt. McKenzie should not have left Vieara alone in the station with Roth; (3) Roth should not have failed to check the video monitor for the twenty minutes or so she spent taking the phone message; (4) Sgt. Walker should have followed specified procedures for intoxicated detainees;[5] and (5) Sgt. Walker should have allowed Jones to pick Vieara up at the station rather than keeping him there overnight.

But these alleged failings "can be characterized, in the best light for the non-movant, as negligence; [they do] not rise to the level of a 'deliberate indifference' claim."[6] Bowen, 966 F.2d at 17.  As this court has observed, if police personnel

---

[5]Even viewing the record in the light most favorable to Jones, Sgt. Walker did not fail to follow the specified procedures for intoxicated detainees.  Jones's argument conflates the specified procedures for *intoxicated* detainees, such as Vieara, and those for *incapacitated* detainees.  While Sgt. Walker arguably would have failed to follow the appropriate procedures had Vieara been incapacitated, Jones does not contend, and the record does not suggest, that Vieara was in that state.

[6]Of course, this court expresses no view as to the merits of Jones's negligence claims, because it is declining to exercise supplemental jurisdiction over them.  See infra Part III(B).

"failed to follow rules concerning classification [or the] supervision of inmates . . . [a] plaintiff may be able to show that they were negligent in performing their duties.  But the Court is not persuaded that any such failure gives rise to a constitutional cause of action." Trask v. Cnty. of Strafford, 772 F. Supp. 42, 44 (D.N.H. 1991); see also, e.g., Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).  Indeed, the court of appeals has held that a 45-minute delay in checking on a detainee--who was on a 15-minute watch because of his known risk of self-injury--did not amount to deliberate indifference. Dobson v. Magnusson, 923 F.2d 229, 231 (1st Cir. 1991).

In light of this authority, Jones cannot show, as a matter of law, that the individual defendants were deliberately indifferent to whatever risk of suicide Vieara exhibited.  They are entitled to summary judgment on the § 1983 claim for that reason as well.

### 2. The Town

As the court of appeals has held, "'the inadequate training of a police officer cannot be a basis for a municipal liability . . . unless a constitutional injury has been inflicted by the officer or officers whose training was allegedly inferior.'" Fryar v. Curtis, 485 F.3d 179, 183 (1st Cir. 2007) (quoting Calvi v. Knox Cnty., 470 F.3d 422, 429 (1st Cir. 2006)); see also Evans

v. Avery, 100 F.3d 1033, 1040 (1st Cir. 1996). Accordingly, because the individual defendants did not violate Vieara's substantive due process rights so as to incur liability under § 1983, the Town cannot be liable under § 1983 either.

The Town is entitled to summary judgment on the § 1983 claim against it for an independent reason. While a municipality cannot be held liable for the unconstitutional actions of its employees on a respondeat superior theory, liability can attach if those actions resulted from a town's failure to train or to supervise its employees. See City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989). That is the basis of Jones's § 1983 claim against the Town here. "The liability criteria for 'failure to train' claims are exceptionally stringent, however." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998) (citing Canton, 489 U.S. at 388-89). A plaintiff must demonstrate both that a city's failure to train the officers "amounts to deliberate indifference to the rights of persons with whom the police come into contact," Canton, 489 U.S. at 388, and that "the identified deficiency in the city's training program [was] closely related to the ultimate injury," id. at 391. Here, even assuming--without deciding--that the Town was deliberately indifferent in not giving its police personnel proper training against violating detainees' substantive due process rights by

15

failing to prevent their suicides, no rational factfinder could conclude that this failing was closely related to Vieara's suicide.[7]

Jones argues that Sgt. Walker should have been better trained in screening for suicidal detainees and that Sgt. McKenzie and the dispatchers should have been better trained in monitoring such detainees.  As already discussed, however, Jones has not pointed to any evidence suggesting that even a properly trained police officer would have identified Vieara as a suicide risk, given his largely innocuous behavior.  As the court of appeals has instructed, "[t]he Constitution does not impose on custodial officials a duty to undergo extensive psychological training to guard against unknown suicide risks." Bowen, 966 F.2d at 19.  Nor has Jones pointed to evidence suggesting that a properly trained dispatcher would have seen the beginning of Vieara's suicide attempt and been able to intervene in time to stop it.[8]  See Stewart, 115 F. Supp. 2d at 199-200 ("It is

---

[7]Jones argues that the Town did not provide the police with any training in identifying and monitoring potentially suicidal detainees.  That argument is undermined by the affidavits of Sgt. Walker and Sgt. McKenzie, as well as the existence of the suicide risk evaluation form.  Regardless, as discussed infra, Jones has not raised a genuine issue of material fact as to whether a lack of training was closely related to Vieara's suicide.

[8]Jones has offered a report from his designated expert on "correctional management and custodial care," Thomas A. Rosazza, opining that, had Walker checked "confused," "crying,"

insufficient for [the plaintiff] merely to allege that the County's correctional facility could have been better designed or that additional measures could have been implemented to prevent inmate suicide attempts."). Jones has not raised a genuine issue of material fact as to whether an alleged deficiency in training actually caused the individual defendants to violate Vieara's substantive due process rights in failing to protect him from

---

"irritable," and "protective custody" on the assessment form, then Vieara would have been classified as "medium risk," which the report says "should have required a heightened level of observation and supervision" and that "[h]ad Vieara been on a heightened suicide watch . . . Roth would have seen [him] in the process of committing suicide." Rosazza goes on to state that "[t]he standard of care for a potentially suicidal detainee is to place him on constant observation . . . until he is evaluated by a mental health professional." Putting aside Rosazza's mixing and matching of seemingly inconsistent and unexplained terminology as to degrees of suicide risk and suicide monitoring, he does not provide any basis for his opinion that a "medium risk" of suicide--and Jones does not claim that Vieara should have been scored any higher than that, even had the form been properly completed--requires a level of monitoring under which Roth would have noticed Vieara in the midst of his suicide (if that is even in fact Rosazza's opinion). Cf. Fed. R. Evid. 702. While Rosazza's report, in a list of "Documents Reviewed," references some published correctional standards, he does not describe the content of those standards at all or say anything else even remotely linking them to the conclusion that rating Vieara just a medium risk of suicide would have required Roth to watch him closely enough to have prevented his death (indeed, if Rosazza is in fact opining that a "medium risk" of suicide demands constant, or near-constant, monitoring, then it begs the question of why the evaluation form has higher categories of risk than that). Accordingly, Rosazza's report does not create a genuine issue of material fact as to whether the allegedly deficient failure to train Walker to properly complete the evaluation form caused Vieara's death. See Bowen, 966 F.2d at 19 n.16.

17

suicide.  For this reason, the Town is entitled to summary judgment on the § 1983 claim against it.


**B.   State-law claims**

In light of the entry of judgment for the defendants on Jones's federal constitutional claim, the court declines to exercise supplemental jurisdiction over her state-law claims. See 28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial . . . judicial economy, convenience, fairness, and comity . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  This is the usual case.


**IV.   CONCLUSION**

For the foregoing reasons, the court grants the defendants' motions for summary judgment[9] as to Jones's § 1983 claim and declines to exercise supplemental jurisdiction over Jones's state law claims.  Those claims are remanded to the Coos County Superior Court.  The clerk shall enter judgment accordingly and close the case.

---

[9]Document nos. 14-15.

**SO ORDERED.**

_____
Joseph N. LaPlante
United States District Judge

Dated: December 16, 2011

cc: Vincent A. Wenners, Jr., Esq.
    Brian J.S. Cullen, Esq.
    Daniel J. Mullen, Esq.